```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          :

        - v. -                    :    S3 11 Cr. 300 (JSR)

CARL KRUGER, and                  :
MICHAEL TURANO,
                                  :
           Defendants.
- - - - - - - - - - - - - - - - - -X
```

**SENTENCING SUBMISSION BY THE UNITED STATES OF AMERICA**

```
                                  PREET BHARARA
                                  United States Attorney
                                  Southern District of New York
                                  Attorney for the United States
                                       of America

GLEN G. McGORTY
MICHAEL BOSWORTH
Assistant United States Attorneys

     - Of Counsel -
```

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum in connection with the April 26, 2012 sentencings of two of the six defendants who now stand convicted of bribery crimes in this case: (1) Carl Kruger, a titan of the New York State Senate and chair of its Finance Committee, who, over a period of years, systematically and wantonly betrayed the public trust by soliciting hundreds of thousands of dollars of bribes; and (2) Michael Turano, a physician and member of Carl Kruger's adopted family, who was one of the primary financial beneficiaries of Kruger's bribery schemes.

Together with the four bribe-payors now convicted in this case -- lobbyist Richard Lipsky, hospital executives David Rosen and Robert Aquino, and health care consultant Solomon Kalish -- Kruger and Turano worked to undermine the core and abiding principle of democratic governance, that elected representatives will act solely in the interest of the public good.  Instead, Senator Kruger, for the benefit of the Turano family, entered into serial corrupt bargains and in so doing violated the sacred duty vested in him to provide honest services to the people of the State of New York.

For the reasons set forth below, and in light of the factors set forth in Title 18, United States Code, Section 3553(a), the Government respectfully requests that the Court sentence Kruger

to a period of imprisonment within the recommended Guidelines range of 108-135 months, and that the Court sentence Turano to a substantial term of imprisonment, but one below the stipulated Guidelines range of 60 months.

## BACKGROUND

Carl Kruger was one of the most influential power-brokers in Albany.  Initially elected in 1994, Kruger quickly established himself as a force to be reckoned with in Albany.  He assumed a succession of powerful positions in the New York State Senate, ultimately rising to become chair of the Senate Finance Committee from 2009-2011, where he exercised great influence over the budget for New York State.

While Kruger certainly leveraged his power to do many good deeds for the constituents of his district as well as for the citizens of New York State as a whole, Kruger also corruptly traded his power and influence for money over a period of years. Kruger now stands convicted of engaging in two separate but substantial bribery conspiracies, one involving the prominent lobbyist Richard Lipsky, and one involving various individuals seeking Kruger's assistance in the health care industry.

The bribery schemes worked as follows: The bribe-payors paid money, directly or indirectly, to one of two consulting companies controlled by Michael Turano, namely, Olympian Strategic

Development Corp. ("Olympian") and Bassett Brokerage ("Bassett"), and in exchange for these payments, Kruger took official action to benefit the bribe-payors. In this fashion, Kruger directed the financial proceeds of his bribery schemes to Michael Turano who – along with his brother Gerard Turano and their mother Dorothy Turano – lived in a mansion on Bassett Avenue in Mill Basin, Brooklyn ("Turano Residence"). Turano, however, did little or no meaningful work to earn the monies paid to Olympian and Bassett by the bribe-payors.

With respect to the Lipsky conspiracy, between November 2007 and March 2011, Richard Lipsky paid approximately $252,000 to a bank account in the name of Olympian, approximately $15,000 to a bank account in the name of Bassett, and approximately $26,000 to Michael Turano personally. Of these funds, approximately $168,000 were funds paid in exchange for official action by Kruger; the remainder of the funds appear to have been paid by Lipsky as a finder's fee for three lobbying clients that Kruger (not Turano) referred to Lipsky and for whom Kruger took no official state action.

In exchange for the $168,000 in bribe payments to Olympian, Bassett and/or Turano personally, Kruger took official action to benefit Lipsky and Lipsky's lobbying clients. Among other things, Kruger assisted in efforts: (1) to delay or amend the law regarding bottle deposits by introducing certain legislation in

April 2009 and by soliciting the support of other New York State Senators for that legislation; (2) to amend the Alcoholic Beverage Control Law by co-sponsoring the Beer Distribution Bill in February 2009, co-sponsoring the Wine Industry and Liquor Store Revitalization Bill in June 2009 and co-sponsoring a version of that bill in January 2011; (3) to repeal an amendment to the New York State Tax Law regarding reporting requirements for alcoholic beverage wholesalers in 2009 and 2010; (4) to support and enhance the collection of State taxes on cigarettes sold in Native American territories by supporting a June 2010 amendment to N.Y. Tax Law §§ 471 and 471-e, by sending a letter to Governor David Paterson in February/March 2010, by issuing legislative subpoenas as part of an investigation into untaxed cigarettes in March 2010, and by writing a letter to the federal judge presiding over a lawsuit regarding such taxes in September 2010; (5) to advocate against the opening of a Wal-Mart store in Brooklyn; (6) to support Quality Laboratory Services, a client of Richard Lipsky, including by advocating on their behalf with certain insurance companies; and (7) to direct or attempt to direct $425,000 in State grants to a certain non-profit institution ("Non-Profit") so that the Non-Profit would hire and continue to employ Lipsky's wife (who was otherwise qualified for the employment and who did meaningful work to justify the approximately $35,000 annual salary she ultimately received from

the Non-Profit).

With respect to the Kalish conspiracy, between November 2007 and March 2011, Olympian received approximately $197,005 from Adex Management, Inc., a company controlled by Solomon Kalish, in a bribery scheme that worked as follows: Individuals and entities including Robert Aquino, the Chief Executive Officer of Parkway Hospital, as well as David Rosen and the MediSys Health Network ("MediSys"), agreed to provide benefits to Kalish and Adex directly or indirectly in exchange for Kruger's official action, and Kalish in turn paid to Turano and Olympian roughly half of the monies that Adex received from the bribe-payors.

In the case of Aquino and Parkway Hospital, Aquino caused $60,000 to be paid to Adex in the summer of 2008, and Kalish in turn paid $26,000 to Olympian. In exchange for the monies that Adex received from Parkway Hospital and that Olympian received from Adex, Kruger took official action in an (ultimately unsuccessful) effort to prevent Parkway Hospital from closing, including by lobbying on Parkway's behalf with Governor David A. Paterson and with officials from the New York State Department of Health.

In the case of Rosen and MediSys, Rosen worked to award a MediSys contract to Compassionate Care Hospice, a hospice company in which Kruger, Kalish, and Adex had an interest (because Adex was paid to generate business for Compassionate Care). In

exchange for Rosen's efforts to award the contract to Compassionate Care Hospice, Kruger took official action to benefit MediSys, including giving Brookdale Hospital a $350,000 grant of State funds, giving Jamaica Hospital a $125,000 grant of State funds, and lobbying Governor David A. Paterson and New York State Department of Health Officials to award the Caritas Hospitals to a consortium of hospitals including MediSys.

Although Kruger did not pocket the bribe proceeds personally, he certainly benefitted from them. Indeed, Kruger himself acknowledged that he was a beneficiary of the funds paid to Olympian and Bassett. In a phone call intercepted on February 15, 2011, Kruger and Michael Turano discussed Gerard Turano's threat to move out of the Turano Residence and also discussed Gerard Turano's simultaneous demand to continue receiving a portion of the funds paid to Olympian and Bassett for "consulting." In a subsequent call intercepted on February 16, 2011, Kruger spoke to Dorothy Turano about Gerard Turano's threat and demand. During the call, Kruger was indignant, explaining, "this whole world was built around 'shared,'" and incredulously asking with regard to Gerard, "he thinks he's going to be the beneficiary of <u>my</u> work?" Kruger went on to say that he had previously told Michael Turano, "I made life easier for the two of you and he is going to be the beneficiary of it? No, it was supposed to be that we were gonna <u>all</u> share in the benefits of

it."

It is understandable that Kruger would have regarded the work that generated income for Olympian and Bassett as "my work": it was Kruger, not Michael or Gerard Turano, whose actions generated the lion's share of the income for Olympian and Bassett and certainly all of the bribe income.  It is also understandable that Kruger believed he shared in the benefits of that work: Kruger was effectively a member of the Turano family and the Turano Residence was his home-away-from-home.  Kruger typically began his day by calling the Turanos or having breakfast with them and typically ended his day by calling the Turanos or having dinner with them.  Kruger vacationed with the Turanos and shared all the major holidays with them.  Kruger helped manage the affairs of the Turano household, for example, directing the installation of security cameras at the Turano residence, setting up appointments on behalf of the Turanos and signing or serving as the point of contact for scores of invoices for work done on, or furnishings for, the Turano Residence including for their elevator, their waterfall sculpture, and their in-home movie theater.  Given that Michael Turano used much of the bribe proceeds to pay for the mortgage on the Turano Residence where Kruger spent so much of his time, and given Kruger's generally deep bonds of affection with the Turano family, of course Kruger benefitted from the bribe proceeds that Turano received and of

course Kruger saw himself as benefitting in this way.

## DISCUSSION

The Government respectfully requests that the Court sentence Kruger to a term of imprisonment within the applicable Guidelines range of 108 to 135 months, and that Turano be sentenced to a substantial term of imprisonment lower than 60 months.

With respect to defendant Kruger, a sentence within the Guidelines is appropriate in light of the seriousness, as well as the nature and circumstances, of the offenses of conviction.  The four bribery offenses of which Kruger stands convicted are among the most venal that a white collar criminal can commit.  Any public servant who converts and leverages the awesome power and responsibility of representing the people into an opportunity for private gain does true violence to our system of democratic governance.

Here, Kruger's criminal conduct as an elected official was particularly repugnant.  Kruger's crimes were sustained, lasting a period of over three years.  They were multifarious, involving at least four bribe-payors, each with a different motive for engaging in the conduct.  They were lucrative, involving hundreds of thousands of dollars of payments.  They distorted the political process, resulting in, among other things, the actual or attempted disbursement of $900,000 in State grants that could

and may well have gone to other recipients, absent the bribes, but were directed instead to the Non-Profit, to Brookdale Hospital, and to Jamaica Hospital.  Worse still, Kruger's bribes were, in part, the product of an unholy and corrupt alliance with a political lobbyist.  That a public official deliberately solicited and accepted bribes from a political lobbyist is as disheartening as it is disgraceful.  It is difficult to think of conduct more likely to confirm – or exacerbate - public cynicism about the political process.

Sentencing Kruger within the Guidelines is also appropriate in light of the need to provide just punishment, promote respect for the law, and effect the goal of general deterrence.  Sadly, in recent years, a number of New York City and New York State elected officials have been sentenced in this District for public corruption offenses.  Each time, the sentencing judge imposed significant terms of imprisonment precisely because of the need to provide just punishment, promote respect for the law, and/or effect the goal of general deterrence.

For example, in <u>United States v. Brian McLaughlin</u>, 06 Cr. 965 (RJS), Judge Sullivan sentenced former Assemblyman McLaughlin to 120 months' imprisonment for crimes including fraud and racketeering - notwithstanding the Government's motion for a downward departure pursuant to 5K1.1 of the United States Sentencing Guidelines in light of McLaughlin's cooperation.  In

9

sentencing McLaughlin, Judge Sullivan explained, "I think general deterrence is crucial here with a public official, someone who held high office, who was respected and admired, who had access to the types of people who had written letters, generously, but nevertheless powerful people who can write articulate and thoughtful letters. You had every opportunity, and you used those opportunities and squandered them for your own benefit on a monumental scale." See Transcript dated May 20, 2009 at 43.

In United States v. Anthony Seminerio, 08 Cr. 1238 (NRB), Judge Buchwald sentenced former Assemblyman Seminerio to a below-Guidelines sentence of 72 months imprisonment for crimes involving $1 million worth of bribes -- notwithstanding the fact that Seminerio was 74 years old and suffered from a number of severe medical conditions. In sentencing Seminerio, Judge Buchwald explained, "Citizens are entitled to trust in the integrity of their government. Now is the time to impose a sentence which sends a message that such conduct is unacceptable because it destroys the fabric of our society. This is [a] message to people like you who have a choice, who have options. This sentence must be a message to other public officials who see easy money and a setting in which the ethics rules do little to prevent temptation." See Transcript dated February 4, 2010 at 19.

In <u>United States v. Efrain Gonzalez</u>, 06 Cr. 726 (WHP), Judge Pauley sentenced former Senator Gonzalez – who faced 108-135 months' imprisonment – to 84 months' imprisonment for crimes involving the embezzlement of over $400,000 in State money. In sentencing Gonzalez, Judge Pauley explained, "While he undoubtedly performed some good and generous acts throughout his life and as a senator, as many of the letters that were submitted to the Court attest, he has brought public disgrace onto himself and the New York State Senate.... there is a compelling need to punish him for his venal acts and to ensure general deterrence among those who would try to use their public offices for personal gain." <u>See</u> Transcript dated May 25, 2010 at 40-41.

Finally, in <u>United States v. Miguel Martinez</u>, 09 Cr. 695 (PAC), Judge Crotty sentenced former New York City Councilman Martinez – who faced 57 to 71 months' imprisonment – to 60 months' imprisonment for embezzling and laundering approximately $100,000. In sentencing Martinez, Judge Crotty explained, "in light of what Mr. Martinez has done over a substantial period of time, where he betrayed his office and violated the oath of office and did so on a frequent and repeated basis over an extended period of time, the only way to promote respect for the law is to give him a sentence that is within the Guidelines range." <u>See</u> Transcript dated December 15, 2009 at 34.

If there were any question about the continued need to deter

elected officials from committing corruption crimes, one answer is provided by this sad but inescapable fact: Each of the significant sentences described above was imposed while Kruger was committing the very crimes for which he now will be sentenced. In other words, Kruger continued to receive bribes and betray the public trust notwithstanding the 10 years of imprisonment that Assemblyman McLaughlin received in May 2009, the 5 years of imprisonment that Councilman Martinez received in December 2009, the 6 years of imprisonment that Assemblyman Seminerio received in February 2010, and the 7 years of imprisonment that Senator Gonzalez received in May 2010. A serious sentence is necessary in this case to reinforce and amplify the message that the judicial system takes corruption offenses seriously and that the elected official who fails to give the public the benefit of his honest services will fail to receive the benefit of leniency at sentencing. Indeed, as the Probation Office explained in justifying their recommended sentence of 108 months, "A strong measure of deterrence is necessary to reflect that the courts view public corruption as an egregious offense and that persons with political influence are not 'above the law.'" PSR at 41.

   With respect to defendant Turano, a significant sentence is warranted because Turano was the primary financial beneficiary of Kruger's offenses. What's more, Turano - through Olympian and

Bassett - provided a sophisticated and critical cover for Kruger's bribes.  Had Kruger received his bribes directly, it is difficult to imagine that his corrupt schemes would have gone on undetected for as long as they did.  But since Lipsky and Adex funneled their bribes to Olympian and Bassett, the bribes were protected by a veneer of legitimacy.  If questioned about the nature of the payments, a bribe-payor could simply claim that the money was for legitimate consulting work - which, incidentally, is precisely what Lipsky, Kalish and Aquino all claimed at one time or another prior to their guilty pleas.  In fact, Turano provided little or no consulting work in exchange for the monies paid to him by Lipsky and Adex.  That being said, the Government notes that there is little evidence that Turano requested that Kruger solicit bribes for his benefit, let alone masterminded the bribery schemes.  As a result, his conduct merits a substantial term of imprisonment, but one less than the applicable Guidelines range of 60 months.

    Finally, the Government notes that the defendants and the Government have reached an agreement concerning forfeiture and restitution in this case.  The parties will produce to the Court copies of the proposed forfeiture and restitution orders on or before the sentencing date.

## **CONCLUSION**

Democratic government, at bottom, rests on a simple organizing principle: our elected representatives will conduct the business of government only in service of the public good. Carl Kruger and Michael Turano worked to undermine this basic principle of democratic governance. Year after year, Kruger leveraged his public prominence for private gain. Kruger peddled his influence and authority, and unfortunately, he found one buyer after another. For this disgraceful conduct, he deserves just punishment. And for all the reasons set forth above, the Government respectfully requests that the Court sentence Kruger to a period of imprisonment within the recommended Guidelines range of 108-135 months, and that the Court sentence Turano to a substantial term of imprisonment, but one below the stipulated Guidelines range of 60 months.